1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  1:18-cr-00180-NONE-SKO

12                 Plaintiff,               ORDER DENYING DEFENDANT'S
                                            MOTION FOR COMPASSIONATE
13        v.                                RELEASE

14   ARIC MATTHEW SALAZAR,                  (Doc. 42)

15                 Defendant.

16

17        Aric Salazar has filed a motion for compassionate release pursuant to 18 U.S.C. §

18   3582(c)(1)(A).  He contends that he should be released because his health conditions put him at

19   high risk of serious illness or death from a coronavirus ("COVID-19") reinfection.  (Doc. 42 at 6,

20   22–34.)  For the reasons explained below, Defendant's motion will be denied.

21                              **BACKGROUND**

22        On August 16, 2018, a grand jury returned a single-count indictment against Defendant

23   charging him with receipt and distribution of material involving the sexual exploitation of minors

24   in violation of 18 U.S.C. material involving the sexual exploitation of minors in violation of 18

25   U.S.C.§ 2252(a)(2).  (Doc. 11.)  Defendant pled guilty to this offense on May 20, 2019, and Judge

26   Lawrence J. O'Neill sentenced Defendant to 120 months imprisonment followed by a 180-month

27   term of supervised release.  (Docs. 33, 34.)  This sentence was nearly three years below the low

28   end of the U.S. Sentencing Commission's Guideline range for Defendant, which was 151–188

                                            1

1    months.  (Doc. 28. Presentence Report ("PSR") at ¶ 83.)

2         Defendant is currently serving his 120-month sentence at Lompoc FCI with a projected

3    release date of November 23, 2027 with application of good conduct time.  *Find an inmate*,

4    FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited December 27, 2021.)

5    To date, he has served approximately 31 months of his 120-month sentence.

6         Defendant filed the pending motion for compassionate release pursuant to 18 U.S.C.

7    § 3582(c)(1)(A) on May 13, 2021.  (Doc. 42.)  The government opposed the motion on June 15,

8    2021, (Doc. 50), and Defendant filed a reply on July 7, 2021, (Doc. 57).

9                                    **LEGAL STANDARD**

10        A court generally "may not modify a term of imprisonment once it has been imposed."  18

11   U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

12   conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

13   be modified by a district court except in limited circumstances.").  Those limited circumstances

14   include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.

15   3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"),

16   motions for compassionate release could only be filed by the Bureau of Prisons ("BOP").  18

17   U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring

18   their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A)

19   (2018).  In this regard, the FSA specifically provides that a court may

20              upon motion of the defendant after the defendant has fully exhausted
               all administrative rights to appeal a failure of the [BOP] to bring a
21              motion on the defendant's behalf[1] or the lapse of 30 days from the
               receipt of such a request by the warden of the defendant's facility,
22              whichever is earlier, may reduce the term of imprisonment (and may

23   _____

24   [1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the
     defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the
     date the Warden signed the response."  28 C.F.R. § 542.15(a).  If the Regional Director denies a
25   defendant's administrative appeal, the defendant must appeal again to the BOP's "General
     Counsel within 30 calendar days of the date the Regional Director signed."  *Id.*  "Appeal to the
26   General Counsel is the final administrative appeal."  *Id.*  When the final administrative appeal is
     resolved, a defendant has "fully exhausted all administrative rights."  *See* 18 U.S.C.
27   § 3582(c)(1)(A).

28

                                             2

1

2

3

impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

4

5

      (i)        extraordinary and compelling reasons warrant such a reduction; or

6

7

8

9

      (ii)      the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

10

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

11

12

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

13

The policy statement with respect to compassionate release in the U.S. Sentencing

14

Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

1   U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13;[3] *see also United States v. Gonzalez*,

2   451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G.

3   § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement

4   was issued before Congress passed the FSA and authorized defendants to file compassionate

5   release motions).  However, the Ninth Circuit recently held "that the current version of U.S.S.G.

6   §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by

7   a defendant."  *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  "In other words, the

8   Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A)

9   motions filed by a defendant."  *Id.*  The Ninth Circuit clarified that "[t]he Sentencing

10   Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for

11   § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."  *Id.* (citing *United States*

12   *v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

13          In so holding, the Ninth Circuit joined the five other circuits who have addressed this

14   issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

15   motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

16   defendant."  *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

17   ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

18   compelling reasons that an imprisoned person might bring before them in motions for

19   compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated

20   version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980

21   F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for

22   compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have

23   full discretion to define 'extraordinary and compelling' without consulting the policy statement

24   §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy

25   statement covering prisoner-initiated applications for compassionate release.  District judges must

26

27   ───────────────────
[3]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18
28   U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person
     or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

4

1 operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

2 deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In

3 short, we agree with the Second Circuit and the emerging consensus in the district courts:  There

4 is as of now no 'applicable' policy statement governing compassionate-release motions filed by

5 defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are

6 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant

7 might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021)

8 ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test,

9 its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case

10 was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G.

11 § 1B1.13.").

12        In the past, when moving for relief under 18 U.S.C. § 3582(c), courts recognized that the

13 defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

14 *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  The Ninth Circuit has not

15 specifically addressed the question of which party bears the burden in the context of a motion for

16 compassionate brought pursuant to § 3582(c) as amended by the FSA. District courts considering

17 the question agree that the burden remains with the defendant.  *See, e.g.*, *United States v.*

18 *Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United*

19 *States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

20                                    **ANALYSIS**

21        As district courts have summarized, in analyzing whether a defendant is entitled to

22 compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must determine whether a

23 defendant has satisfied three requirements:

24              First, as a threshold matter, the statute requires defendants to
               exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).
25              Second, a district court may grant compassionate release only if
               "extraordinary and compelling reasons warrant such a reduction"
26              and "that such reduction is consistent with applicable policy
               statements issued by the Sentencing Commission. *Id.*  Third, the
27              district court must also consider "the factors set forth in Section
               3553(a) to the extent that they are applicable." *Id.*

28

                                         5

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.      Administrative Exhaustion**

Under 18 U.S.C.§ 3582(c)(1), an innate may only file a motion for sentence reduction after the BOP has denied his request or after thirty days have passed since BOP received the request.  The government concedes that Defendant has complied with this requirement by submitting a request for compassionate release to his Warden on July 18, 2020, which was denied on October 14, 2020.  (Doc. 50 at 4.)  Because a failure to exhaust administrative remedies where such is required is normally viewed as an affirmative defense, the government's concession on this point is dispositive.  Therefore, the Court will address the merits of Defendant's motion.

**B.      Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

6

condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[4]  In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. 2020).

Defendant argues that he is particularly vulnerable to COVID-19 due to his type 2

---

[4]  Defendant is 37 years old, so his age is not a pertinent consideration for the purposes of the "extraordinary and compelling" analysis.

1    diabetes, hyperlipidemia, essential (primary) hypertension, and slight obesity.  (Doc. 42-1 at 1,

2    53.)  Defendant's medical records also indicate that he has already contracted and recovered from

3    COVID-19 with mild symptoms at worst[5] and no apparent complications.  (Doc. 42-1 at 108–

4    112.)  On March 3, 2021, Defendant was offered the COVID-19 vaccine and refused to take it.

5    (Doc. 42-1 at 58, 81.)

6         Defendant's hypertension, diabetes, and obesity may place him at a greater risk of

7    suffering severe illness if he were to contract COVID-19 again.  *See generally People with

8    Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

9    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

10   conditions.html (last visited December 27, 2021).  However, Defendant's refusal to get

11   vaccinated against COVID-19 artificially elevates this risk.  In cases where an inmate cites the

12   risk of contracting COVID-19 as a basis for relief but refuses to receive a vaccine, courts across

13   the country "have nearly uniformly denied compassionate release" because such refusal

14   "undercuts [an inmate's] fear of infection."  *United States v. Thomas*, 14-cr-00228, 2021 WL

15   1813192, at *1 (E.D. Cal. May 6, 2021) (citing *United States v. Robinson*, 17 Cr. 611-7 (AT),

16   2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021) (collecting cases)).  Courts have sometimes

17   excused vaccine refusal where defendants have demonstrated a specific medical risk associated

18   with taking the COVID-19 vaccine.  *See United States v. Oles*, 10-cr-00126, 2021 WL 2333635,

19   at *2 (D. Or. June 8, 2022) (ordering release where a defendant with underlying health conditions

20   experienced an allergic reaction to the first dose of the Moderna vaccine and followed CDC

21   guidance to opt out of a second dose).

22        Defendant claims that he refused the Moderna vaccine because he had previously

23   experienced adverse reactions to influenza vaccinations.  (Doc. 57 at 8).  But Defendant offers no

24   actual evidence of such adverse reactions aside from his refusal of the flu and COVID-19

25   _____

26   [5]  Medical records show that defendant reported having no symptoms while he was quarantined
     for COVID-19 (*see* Doc. No. 42-1 at 108–109); defendant now claims that he *did* experience
27   some symptoms, such as cough, muscle pain, and loss of taste and smell, and he hid these
     symptoms for fear of being placed in solitary confinement.  (Doc. No. 42 at 27.)  It is
28   uncontested, however, that defendant recovered from COVID-19 with no serious effects.

vaccines in 2020 and 2021.  (*See* Docs. 42-1 at 44, 57-1 at 3.)  In fact, medical records show that Defendant received the flu vaccine in February 2020 without any documented complications. (Doc. 54 at 159.)  Defendant also offers no support for his allegation that he was advised by a medical professional against taking the COVID-19 vaccine, (Doc. 42 at 33), and later states that he did not take the vaccine because he was "not adequately informed of what could occur from the vaccinations" and was "not encouraged" by prison staff to take the vaccine.  (Doc. 57 at 22.) These assertions are insufficient to establish that the COVID-19 vaccine is medically contraindicated for Defendant.  *See United States v. Arciero*, No. CR 13-001036 SOM, 2021 WL 2369403, at *4 (D. Haw. June 9, 2021), *reconsideration denied*, No. CR 13-01036 (01) SOM, 2021 WL 2462278 (D. Haw. June 16, 2021), *aff'd*, No. 21-10177, 2021 WL 5986873 (9th Cir. Dec. 16, 2021), and *aff'd*, No. 21-10177, 2021 WL 5986873 (9th Cir. Dec. 16, 2021) (denying compassionate release where defendant refused COVID-19 vaccine due to an allergy but did not provide any evidence that she was actually allergic to the COVID-19 vaccine or anything in it); *see also United States v. Rollness*, No. CR06--041RSL, 2021 WL 4476920, at *5 (W.D. Wash. Sept. 30, 2021) (holding that defendant's decision to decline the [COVID-19] vaccine weighs against compassionate release on the basis of vulnerability to COVID-19 where defendant failed to provide documentation supporting his alleged vaccine-related injuries); *United States v. Beard*, No. 1:16-CR-00046-NONE, 2021 WL 5054413 (E.D. Cal. Nov. 1, 2021) (finding that a defendant's refusal to take the COVID-19 vaccine undercut his alleged fears of infection where defendant refused only because he had "reservations and questions" regarding the safety of the vaccine).

Furthermore, any risk that Defendant may face in a second bout with COVID-19 is mitigated by other factors.  First, Defendant is only 37 years old, which does not place him in a higher risk category.  *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 27, 2021) ("Older adults are more likely to get severely ill from COVID-19.  More than 81% of COVID-19 deaths occur in people over age 65.")  Second, Defendant's hypertension and diabetes are currently being

1  managed with medication.  (Doc. 54 at 1, 53.)  Finally, Defendant has recently indicated that he

2  has requested and plans to receive the COVID-19 vaccine.  (Doc. 64 at 3–4.) [6]

3         Based on the medical evidence before the Court, Defendant is not "suffering from a

4  serious physical or medical condition" sufficient to warrant compassionate release.  *See* U.S.S.G.

5  § 1B1.13, cmt. n.1 (A)(ii).  Therefore, his motion will be denied on this basis.

6  **C.    Consistency With the § 3553(a) Factors**

7         Because the pending motion fails to establish extraordinary and compelling reasons

8  justifying compassionate release, the Court need not address whether any reduction in

9  Defendant's sentence would be consistent with consideration of the sentencing factors set forth at

10  18 U.S.C. § 3553(a).  Nonetheless, the Court notes that Defendant's 120-month sentence is nearly

11  three years lower than the guidelines range of 151-188 months, and Defendant has only served

12  approximately 20% of his already-reduced sentence.  No further reduction is warranted in this

13  case, as the granting of Defendant's motion would not reflect the seriousness of Defendant's

14  offense of conviction, promote respect for the law, provide just punishment, or afford adequate

15  deterrence to criminal conduct.  *See* § 3553(a); *see also United States v. Purry*, No. 2:14-cr-

16  00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*,

17  No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of

18  the sentence remaining is an additional factor to consider in any compassionate release analysis,

19  with a longer remaining sentence weighing against granting any such motion." (citation omitted)).

20                              **CONCLUSION**

21         For the reasons explained above, the Court concludes that Defendant has not demonstrated

22  that "extraordinary and compelling reasons" exist warranting his compassionate release from

23  prison.  Moreover, the Court finds that the granting of release at this time is not consistent with

24  the sentencing factors set forth in 18 U.S.C. § 3553(a).  Accordingly, Defendant's motion for

25  ---
[6] Moreover, as of January 9, 2022, it appears that the Bureau of Prisons is reporting that only 8
26  inmates and 9 staff members are currently suffering from active infections with the virus causing
COVID-19 at Lompoc FCI.  *See* COVID-19, FEDERAL BUREAU OF PRISONS,
27  https://www.bop.gov/coronavirus/ (last visited January 9, 2022).  Though current CDC guidelines
as to testing and the manner of counting "active cases" may underreport this number, there is no
28  evidence challenging these figures.

compassionate release (Doc. 42) is **DENIED**.

IT IS SO ORDERED.

    Dated:   **January 14, 2022**

UNITED STATES DISTRICT JUDGE